UNITED STATES DISTRICT COURT　　　ELECTRONIC PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
TREMAIN GRAHAM and TRELLIS HORTON,

                        *Plaintiffs*,

      -against-　　　　　　　　　　　　　　MEMORANDUM
　　　　　　　　　　　　　　　　　　　　　　　　AND ORDER
　　　　　　　　　　　　　　　　　　　　　　　　09-CV-1635
EMPIRE BAIL BONDS,

                        *Defendant*.
-------------------------------------------------------------------x
A P P E A R A N C E S:

    TREMAIN L. GRAHAM
    P.O. Box. 350026
    Jamaica, New York 11435
    *Plaintiff, pro se*

    HORTON M. TRELLIS
    754 Bushwick Avenue, Apt. 1
    Brooklyn, New York 11221
    *Plaintiff, pro se*

    HAZZARD & ASSOCIATIONS, P.C.
    62 Nichols Court, Suite 201
    Hempstead, New York 11550
    By:    Robert S. Hazzard
    *Attorneys for the Defendant Empire Bail Bonds*

JOHN GLEESON, United States District Judge:

        On April 16, 2009, Tremain Graham and Trellis Horton filed a *pro se* complaint against the State of New York, the City of New York, the Department of Corrections, Empire Bail Bonds, Rikers Island Correctional Facility and two individual police officers. The complaint alleged, *inter alia*, that Graham was illegally arrested on August 7, 2008. On March 12, 2010, the case was dismissed as against all defendants except Empire Bail Bonds ("Empire") due to the plaintiffs' persistent failure to respond to discovery requests.

On March 26, 2010, Empire moved for summary judgment.[1] I heard oral argument on the motion on May 7, 2010. For the reasons stated below, the defendant's motion is granted.

BACKGROUND

For the purposes of the instant motion, I accept undisputed facts as true and resolve disputed facts in favor of the non-moving parties where there is evidence to support their allegations.

On January 11, 2008, Trellis Horton, using Empire's services, posted a $2,000 bond to secure the release of her son, Tremain Graham, from New York State custody. Graham had been indicted on two charges of criminal contempt in the first degree and two charges of criminal contempt in the second degree. On August 6, 2008, Empire revoked Graham's bail bond and directed a fugitive recovery agent to apprehend Graham and return him to state custody. Graham was arrested on August 7, 2008.[2] Graham alleges that he was arrested without the consent of a judge and, therefore, his arrest was unlawful.

On August 22, 2008, Graham filed a complaint in New York City Civil Court alleging that his arrest on August 7, 2008 rendered Empire's services defective. Graham claimed he suffered damages in the amount of $2,800. On October 2, 2008, the parties agreed to add Horton as a plaintiff since she contracted with Empire to post the bond. On January 6, 2009, the matter was settled and a stipulation of settlement was executed by the parties. Under the terms

---

[1] In a letter dated March 25, 2010, Graham alleges that Empire should not be permitted to move for summary judgment because Empire did not properly answer the plaintiffs' complaint. Empire filed its answer to the amended complaint on June 16, 2010. Graham argues that the defendants failed to identify the reasons why his bail was revoked in 2008. Federal Rule of Civil Procedure 8(b) requires an answering party to: "(A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party." The answer filed by Empire complies with these requirements.

[2] At oral argument, Graham stated that his arrest occurred on August 8, 2008. Because the date of Graham's arrest does not affect the outcome, resolution of this factual dispute is not necessary for the purposes of this motion.

of the settlement, Empire agreed to pay Horton $400 in exchange for the execution of general releases by both her and Graham. The plaintiffs executed these releases before a notary public on January 27, 2009, and Empire sent the plaintiffs a check in the amount of $400 on February 2, 2009. Three weeks later, Horton deposited the check.

## DISCUSSION

A.   *The Summary Judgment Standard of Review*

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also e.g.*, *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 61 (2d Cir. 2002). The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs.*, *Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir. 1994). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co*., 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962) (per curiam); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). Therefore, although a court "should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods. Inc*., 530 U.S. 133, 151 (2000). However, the party opposing summary judgment "may not rely

merely on allegations or denials in its own pleading; rather, its response must … set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586. Nor will "conclusory statements, conjecture, or speculation" by the nonmoving party defeat the motion. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Summary judgment is proper when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223-24 (citations omitted).

B.  *The General Releases Executed by Graham and Horton*

Empire argues that a prior settlement bars the plaintiffs from bringing new claims related to Graham's arrest in August of 2008. I agree.

"It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Collins v. Harrison-Bode,* 303 F.3d 429, 433 (2d Cir. 2002) (internal quotation marks omitted). The primary objective when interpreting a contract is "to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere de Cic et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 232 F.3d 153, 157 (2d Cir. 2000). Summary judgment is appropriate only when the contractual language is "wholly unambiguous." *Topps Co., Inc. v. Cadbury Stani S.A.I.C.,* 526 F.3d 63, 68 (2d Cir. 2008); *see also Omni Quartz v. CVS Corp.,* 287 F.3d 61, 64 (2d Cir. 2002)("The proper interpretation of an unambiguous contract is a question

of law for the court, and a dispute on such an issue may properly be resolved by summary judgment."). Ambiguous contractual language is "capable of more than one meaning when viewed objectively by a reasonably intelligent person." *Palmieri v. Allstate Ins. Co.,* 445 F.3d 179, 191 (2d Cir. 2006).

Here, the general releases signed by Graham and Horton are unambiguous. In exchange for $400, Horton and Graham agreed to "release[] and discharge[] … Empire Bail Bonds and all other affiliated subsidiary and/or related entities … from all actions, causes of action, suits, debts, dues, sums of money … from the beginning of the world to the day of the date of this RELEASE." Ex. F to Hazzard Aff. Although Graham and Horton alleged in their 2008 suit that Empire breached its contract with Horton by rendering "defective services," there is no language limiting the scope of the releases to contractual claims. Ex. C to Hazzard Aff. The releases explicitly waived *all claims* that could have been brought by Graham and Horton against Empire at the time of settlement; its language cannot be understood to present any other meaning. "By executing a general release with this broad language, [the plaintiffs] released not only the claims that were specifically in dispute in that action, … but also any claims that could have been raised against [the defendant] at that time." *Sibersky v. Borah, Goldstein, Altschuler & Scwhartz, P.C.,* No. 99 Civ. 3227, 2002 WL 1610923 at *5-6 (S.D.N.Y. July 22, 2002)("very broad language" granted defendant release of "all claims arising from the beginning of time to date."). The false arrest claim that the plaintiffs now bring against Empire arises out of the same set of facts that gave rise to the contractual claim brought in 2008. This claim could have been brought in 2008 and, therefore, it was waived by the general releases signed by the plaintiffs in 2009.

CONCLUSION

"The language [of the release] is as broad and general as it is clear, and there is no genuine dispute that plaintiff[s'] claim falls within its confines." *Kraft Foods, Inc. v. All These Brand Names, Inc.*, 213 F. Supp. 2d 326, 330 (S.D.N.Y. 2002). Accordingly, since there is no allegation that the release was "procured by fraud, duress, undue influence, or some other illegal means," *id.*, Empire's motion for summary judgment is granted.

So ordered.

John Gleeson, U.S.D.J.

Dated: May 7, 2010
      Brooklyn, New York